NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAYVON WILLIAMS, *et al.*,<br><br>Defendants. | Criminal Action No. 19-184 (CCC)<br><br>**OPINION** |

**CECCHI**, District Judge.

Presently before the Court is Dayvon Williams' ("Defendant" or "Williams") motion to suppress evidence and statements allegedly obtained in violation of his constitutional rights, and seeking additional relief, including requests for the Court to compel the Government to produce evidence under the Government's disclosure requirements. ECF No. 28.[1] The Government filed opposition (ECF No. 33) and Williams replied thereto (ECF No. 34). Oral argument was held (ECF No. 43) and the parties submitted additional briefing concerning security camera footage of the events in question and whether an evidentiary hearing was needed (ECF Nos. 44–46).[2]

---

[1] Defendant Quentin Jackson ("Defendant Jackson") also filed a motion to suppress (ECF No. 29), but later entered into a plea agreement (ECF No. 76) and has been sentenced by this Court (ECF No. 89).

[2] At the hearing on this matter (ECF No. 43), Defendant raised for the first time the contention that the police report describing the events in question was contradicted by security camera footage that captured the events, and argued that an additional evidentiary hearing was necessary. ECF No. 47 at 23–27. The Court directed the parties to submit the footage to chambers and brief their arguments. Defendant later filed submissions arguing that police radio calls from the scene also indicate the need for an evidentiary hearing (ECF Nos. 48 and 49), the Government opposed (ECF No. 55) and Defendant filed a reply (ECF No. 56). The Court has reviewed the footage, radio transcripts, and the parties' submissions on these materials, and finds no further evidentiary hearing is necessary. The footage and radio transcript do not reveal any material inconsistencies in the police report and in no way alter the Court's analysis of the legal challenges raised in Defendant's motion. Defendant's request for an evidentiary hearing is therefore denied. *See United States v. Jackson*, 363 F. App'x 208, 210 (3d Cir. 2010) (internal citation and quotation

Defendant has also submitted additional letters that the Court has reviewed. The Court has considered all of the papers and exhibits before it as well as the parties' arguments presented at oral argument. For the reasons expressed below, Defendant's motion is hereby denied.

## I.  BACKGROUND

On or around December 11, 2018, officers with the Jersey City Police Department's Street Crimes Unit were on patrol due to recent shootings in the area. ECF No. 1 ("Crim. Compl.") at 5; ECF No. 28-1 at Ex. A, p. DW013. At approximately 3:00 p.m., an officer observed an individual named Abdulalim Hardy ("Hardy")[3] engage in what the officer believed was a hand-to-hand drug transaction in front of a building on Grant Avenue ("the Grant Residence"). Crim. Compl. at 5; *see also* ECF No. 34 at 3 (Williams acknowledging "Hardy's earlier drug deal."). About an hour later, several officers approached a group of eight to ten individuals, including Hardy and Defendant, who were in front of the Grant Residence. Crim. Compl. at 5; ECF No. 28-1 at Ex. A, pp. DW014. The Government claims that the officers approached these individuals to follow up on the alleged drug deal and to conduct "a field interview." Crim. Compl. at 5; ECF No. 28-1 at Ex. A, p. DW014. The officers recognized some of the individuals in front of the Grant Residence, including Defendant, as associates of the gangs that were thought to be responsible for the recent shootings in the area. ECF No. 28-1 at Ex. A, p. DW013–DW014.

---

marks omitted) ("[T]o warrant an evidentiary hearing, a defendant's motion must contain issues of fact material to the resolution of the defendant's constitutional claim."); *United States v. Persinger*, 284 F. App'x 885, 887 (3d Cir. 2008) (internal citation and quotation marks omitted) ("A district court is not always obligated to conduct an evidentiary hearing in conjunction with a motion to suppress, but need only do so if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome.").

[3] Hardy was separately charged with possession of a firearm by a convicted felon. *See* Case No. 19-cr-746. Hardy entered a guilty plea in that matter. *See* id.

As the officers approached the Grant Residence, Hardy began walking away and one of the approaching officers "observed what appeared to be the handle of a revolver-type handgun in [Hardy's] jacket pocket." Crim. Compl. at 5; ECF No. 28-2 at 8; ECF No. 31 at 6. Upon seeing what appeared to be a handgun in Hardy's jacket pocket, the officers unholstered their weapons and directed Hardy to stop and put his hands up. Crim. Compl. at 5; ECF No. 28-2 at 8; ECF No. 31 at 6. Hardy complied and a subsequent search by the officers revealed that Hardy was in possession of a handgun. Crim. Compl. at 5.

At the same time as the officers shouted for Hardy to stop, Williams fled and jumped a nearby fence. Id.; ECF No. 28-1 at Ex. A, p. DW014; ECF No. 28-2 at 8. As Williams jumped the fence, the Government claims that one of the officers observed "what appeared to be the handle of a black handgun protruding from the rear pocket of [Williams'] jeans." Crim. Compl. at 5; *see also* ECF No. 28-1 at Ex. A, p. DW014. The officers pursued Williams and found a gun in an alleyway near 199–201 Claremont Avenue, which was in the direction that Defendant had fled. Crim. Compl. at 5–6; ECF No. 28-2 at 9 (citing the police report). The officers subsequently found Defendant hiding in a stairwell near 197 Claremont Avenue and arrested him. Crim. Compl. at 6; ECF No. 28-2 at 9.

Williams was subsequently arrested and brought to the Street Crimes Unit's headquarters. Id. at DW015. The officers then asked Defendant whether or not he was permitted to legally carry a gun, to which Defendant apparently answered "No." Id. The Government subsequently brought federal charges against Defendant. *See generally* Crim. Compl. Specifically, the Government has brought a single charge against Defendant for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Id. at 2–3. Defendant now moves to suppress the gun, post-arrest statement, and any other evidence. No. 28-2 at 9. Defendant also moves to compel the Government

to timely produce any <sup>materials</sup> in compliance with various disclosure requirements, including *Brady v. Maryland*, 373 U.S. 83, 84 (1963), its progeny, and Federal Rule of Evidence 404(b). ECF No. 28-2 at 9.[4] The Court will address each of these requests in turn.

## II.     MOTION TO SUPPRESS

### A. Fourth Amendment Claims

Defendant argues that the police officers unreasonably seized him without probable cause when the officers first approached the Grant Residence, displayed their weapons, and ordered Hardy to stop. *See* ECF No. 28-2 at 10–17. Defendant contends that he was unreasonably seized from the moment the police displayed their weapons and therefore everything that followed must be suppressed under the fruit of the poisonous tree doctrine, including the discovery of the gun and any post-arrest statements. *See* ECF No. 28-2 at 10–17. In deciding this matter, the Court shall consider: (1) whether there was a seizure; and (2) whether the officers had probable cause. For the reasons expressed below, the Court finds that there was not a seizure at the time alleged by Defendant and, even if the Court did find there was a seizure, the officers had a reasonable articulable suspicion to seize Defendant.

1. Legal Standard.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To prevail on a motion to suppress, a defendant generally bears the burden of proving the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta*, 965 F.2d 1248, 1257 n.5 (3d Cir. 1992) ("The proponent

---

[4] Defendant also moved to sever his case from Defendant Jackson's case (ECF No. 31), but as Jackson has entered into a plea agreement and been sentenced, the Court need no longer address severance in this Opinion.

4

of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."). However, once the defendant has established a basis for his motion, *i.e.*, that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). The Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

2. There Was No Seizure.

Before addressing whether a police officer had probable cause or reasonable articulable suspicion to seize an individual, the Court must first determine whether a seizure within the meaning of the Fourth Amendment actually occurred. *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (citing *United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005)). "A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when ultimately unsuccessful,' or (b) submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Whether or not a person submitted to the officer's show of authority "depends on both the nature of the show of authority and the suspect's conduct at the time the officer asserted his authority." *United States v. Lowe*, 791 F.3d 424, 430–31 (3d Cir. 2015). "When a suspect flees after a show of authority, the moment of submission is often quite clear: It is when the fleeing suspect stops, whether voluntarily or as a result of the application of physical force." *Id.* at 431 (citing *Hodari D.*, 499 U.S. at 628–29).

Here, Defendant argues that he was seized for purposes of the Fourth Amendment when the officers displayed their weapons and ordered Hardy to stop and put his hands up, which allegedly restrained the movements of all the other individuals in front of the Grant Residence as

5

well as Hardy. ECF No. 28-2 at 14; ECF No. 31 at 12. However, the facts of this case do not support a finding of seizure under either of the theories articulated by *Hodari D.* and its progeny. Despite Williams' argument to the contrary (ECF No. 34 at 2), the officers' display of their guns, without any physical contact, did not qualify as "an application of physical force." *See United States v. Waterman*, 569 F.3d 144, 146 (3d Cir. 2009) ("While this act [of police officers drawing their guns] definitely constituted a display of force, we conclude that it fell short of the physical force required under *Hodari D.*").

It is unclear from the record whether the officers pointed their weapons at just Hardy or all of the individuals, including Defendant, when they first approached the Grant Residence. To the extent the officers' display of their weapons and order to stop was directed at the entire group, that action qualified as a show of authority toward Defendant. Regardless, the Court cannot conclude that Defendant was seized at that time, as he did not submit to the officers' show of authority. It is uncontested that Williams fled immediately after the officers ordered Hardy to stop, which is clearly not a submission to the officers' authority under Third Circuit precedent. *See Lowe*, 791 F.3d at 433 ("The most obvious example [of failure to submit to authority] is when a suspect runs from the police."); *Waterman*, 569 F.3d at 146 (finding that the defendant did not submit to officers' show of authority when, instead of raising his hands with the other suspects, the defendant "moved his hands toward his waistband, and ultimately retreated into the house"). Though Defendant eventually submitted to police authority after he allegedly disposed of his weapon (after the officers found him in the stairway), that submission did not occur when the police officers first displayed their guns and approached the Grant Residence. Therefore, the Court finds that Defendant was not seized within the meaning of the Fourth Amendment when the officers displayed their guns and ordered Hardy to stop.

3. Even if There Was a Seizure, The Officers had Reasonable Articulable Suspicion to Seize Defendant

Assuming *arguendo* that Defendant was seized when the officers first approached the Grant Residence and ordered Hardy to stop, the Court would nevertheless still have to deny Defendant's motion because the officers had reasonable articulable suspicion to conduct the seizure. An exception to the warrant requirement of the Fourth Amendment is the stop-and-frisk doctrine first established in *Terry v. Ohio* ("*Terry* stop-and-frisk"), whereby an officer can "conduct a brief, investigatory stop when the officer has [reasonable articulable suspicion] that criminal activity is afoot." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Courts assess reasonable articulable suspicion by examining the totality of the circumstances to determine whether officers had a "particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). This inquiry "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418).

In the present case, Defendant argues that, even if the officers had reasonable articulable suspicion to stop Hardy, there was no indication that Defendant was personally engaged in criminal activity when the officers approached the Grant Residence and displayed their weapons. ECF No. 28-2 at 15; ECF No. 31 at 13. To support this argument, Defendant references a case in which a district court granted a defendant's suppression motion upon finding that police officers in an unmarked car did not have reasonable articulable suspicion to stop three men walking down a sidewalk. *See United States v. Carter*, No. 99-50, 1999 WL 1007044, at *5–7 (D. Del. Oct. 22, 1999). The Court in *Carter* explained that the officers' sole basis for the stop was that one of the

7

men "moved both hands to his waist and made a sudden turning movement to the left," and that this was insufficient to permit the officers to perform a *Terry* stop-and-frisk without a more objective indication of criminal activity. *Id.*

The Court is not persuaded by Defendant's argument and finds that the officers had reasonable articulable suspicion to perform the alleged *Terry* stop-and-frisk based on the totality of the circumstances. Unlike the officers in *Carter*, the officers here had clear indications that criminal activity had occurred, or was occurring, when they approached the individuals in front of the Grant Residence. As previously stated, the officers: (1) were conducting a proactive patrol in the area in connection with two shootings that had recently occurred nearby; (2) had been informed by another officer that Hardy was engaged in a hand-to-hand drug transaction in front of the Grant Residence an hour earlier; and (3) observed Hardy in front of the Grant Residence with several individuals, including Defendant, who the officers recognized as associates of the gangs that were thought to be responsible for the recent shootings. Perhaps most critically, the officers approaching the Grant Residence observed what they believed to be the handle of a handgun protruding from Hardy's jacket, which the Court finds sufficient in combination with the abovementioned circumstances to give the officers reasonable articulable suspicion that criminal activity was afoot.[5]

The officers had reasonable articulable suspicion to perform a *Terry* stop-and-frisk of both Hardy and Williams—as compared to just Hardy—based on the combination of Defendant's proximity to Hardy in front of the Grant Residence and the abovementioned circumstances, such

---

[5] Arguably, the observation of a gun in plain view gave the officers probable cause, rather than reasonable articulable suspicion, to seize at least Hardy. *See United States v. Steed*, 395 F. App'x 850, 853 (3d Cir. 2010) ("At that point [when the officer observed a gun in the defendant's waistband], what had only been a reasonable suspicion to investigate rose to probable cause to arrest.").

as the fact that Defendant was known by these officers to associate with gangs thought to be connected to the recent shootings in the area. *See United States v. Adderly*, 306 F. App'x 766, 768 (3d Cir. 2009) (finding that the officers had reasonable articulable suspicion to stop and frisk the defendant because "there were more factors than [his] mere presence at the scene that justified the search," such as the events taking place in a high drug area where open drug transactions had recently occurred with only six or seven people present). Therefore, the Court finds in the alternative that the officers were permitted to seize Defendant. Accordingly, the Court shall deny Defendant's motion to the extent that it seeks to suppress the gun and other evidence under the Fourth Amendment.[6]

**B. *Miranda* Claims**

Defendant also argues that his statement regarding whether or not he was legally permitted to possess a gun must be suppressed because the officers did not provide him with his *Miranda* rights. ECF No. 28 at 18; There is no indication in the record that the officers advised Defendant of his *Miranda* rights before Defendant answered any questions in custody regarding whether he could legally possess a gun. The Government does not contest this conclusion. ECF No. 33 at 7–8. Instead, the Government has indicated in its opposition brief that it does not intend to use Defendant's statement at trial except for purposes of impeachment. Id. Considering the statement will not be used at trial in the Government's case-in-chief, the Court shall deny Defendant's motion to suppress his statement as moot. *See Durante v. United States*, No. 16-8949, 2020 WL 205895,

---

[6] The Court also notes that since the weapon was observed and recovered in plain view, it is questionable whether Defendant can even assert that his Fourth Amendment rights were violated here. *See United States v. Han*, 74 F.3d 537, 543 (4th Cir. 1996) ("[A] person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property."). As Defendant's motion to suppress must be denied for the reasons already stated above, the Court declines to rule on this argument at this time.

at *5 (D.N.J. Jan. 13, 2020) (citing *Harris v. New York*, 401 U.S. 222, 225–26 (1971). ("[T]he Supreme Court has held that a defendant's statement obtained in violation of *Miranda*, although inadmissible as substantive evidence, may also be used to impeach the defendant at trial."); *United States v. Shaky*, No. 09-299, 2010 WL 4625511, at *1 n.1 (W.D. Pa. Nov. 4, 2010) (denying motion as moot as allegedly suppressible statements would not be used at trial); *United States v. Zolp*, 659 F. Supp. 692, 717 (D.N.J. 1987) (same).

### III. MOTION TO PRODUCE

Defendant also made several requests for production, such as requests that the Government: (1) produce any exculpatory evidence under *Brady* and its progeny; (2) produce material under the Jencks Act, 18 U.S.C. § 3500, at least one week before trial; (3) preserve rough notes of interviews; and (4) make pretrial disclosures of materials it intends to introduce at trial under Federal Rule of Evidence 404(b). ECF No. 28-2 at 22–24. However, all of these requests are either moot or premature. The Government represents that it is well aware of its various disclosure and preservation obligations, and further represents that it has and will promptly abide by these various requirements as they become due. ECF No. 33 at 10–11. Defendant does not contend that the Government has failed to abide by its various disclosure or preservation obligations. To the contrary, Defendant states that "the government has produced many of the requested materials." ECF No. 28-2 at 22. Additionally, the Government states that it is willing to provide Defendant with any Jencks material at least one week prior to trial. ECF No. 33 at 11. Accordingly, Defendant's motion is denied at this time to the extent that it seeks for the Court to compel the Government to make various disclosures or preserve rough notes from interviews.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby denies Defendant's motion. An appropriate Order follows this Opinion.

**DATE**: May 21, 2021.

_____
**CLAIRE C. CECCHI, U.S.D.J.**